

**SIGNED this 30th day of November, 2011.**

_____
**CRAIG A. GARGOTTA**
**UNITED STATES BANKRUPTCY JUDGE**
_____

### IN THE UNITED STATES BANKRUPTCY COURT
### FOR THE WESTERN DISTRICT OF TEXAS
### AUSTIN DIVISION

| | | |
|---|---|---|
| IN RE: | § | CASE NO. 06-10078-CAG |
| | § | |
| REX DEAN HUTTON, | § | CHAPTER 7 |
| | § | |
| Debtor. | § | |

| | | |
|---|---|---|
| REX DEAN HUTTON | § | |
| Plaintiff, | § | |
| | § | ADV. NO. 10-01169-CAG |
| v. | § | |
| | § | |
| SHAWN FERGUSON, JAMES R. | § | |
| GOTWALS & ASSOCIATES, INC. | § | |
| Defendants. | § | |

### MEMORANDUM OPINION
### GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

Before the Court is Defendants' Motion for Summary Judgment (the "Motion") filed by

Shawn Ferguson and James R. Gotwals & Associates, Inc. on April 18, 2011  (docket no. 11).

This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334, and the

matter is deemed a core proceeding under 28 U.S.C. § 157(b)(2)(I). This matter is referred to this Court under the district court's Standing Order of Reference. Venue is proper under 28 U.S.C. §§ 1408 and 1409. A hearing was held on June 15, 2011, to consider the Motion. Having considered the pleadings and the record in this case, the Court finds that the matter is ripe for summary judgment. *See* FED. R. CIV. P. 56(c) (made applicable to this adversary proceeding by FED. R. BANKR. P. 7056).

## FACTUAL AND PROCEDURAL BACKGROUND

Rex Dean Hutton and Shawn Ferguson were divorced in Missouri in May 2003 (docket no. 11, ex. 2). The divorce decree awarded Hutton and Ferguson joint legal and physical custody of their daughter and son. *Id.* Thereafter, the parties and their children relocated to Tulsa, Oklahoma (docket no. 11, p. 3). By the fall of 2003, Hutton had domesticated the Missouri divorce decree in Oklahoma and each party had moved to receive sole custody (docket no. 11, ex. 3).

In the spring of 2005, during the course of the custody dispute, Ferguson filed a Motion for Sanctions and Addendum to Motion for Sanctions in the district court for Tulsa County, Oklahoma, asserting that Hutton's responses to discovery requests were "essentially useless, disingenuous, evasive and largely non-responsive." (Docket no. 11, ex. 4, p. 3). The custody trial began on May 24, 2005, and continued over six days (docket no. 11, ex. 5, p. 4). On October 20, 2005, the Tulsa County district court granted Ferguson's request for sanctions and entered a default judgment in favor of Ferguson, awarding her sole custody of the parties' children. *Id.* at 5. These rulings were memorialized in a judgment filed November 18, 2005 (docket no. 11, ex. 6). The judgment provided, *inter alia*, that Ferguson "submit an application

for monetary sanctions to the Court within 30 days from the date of the entry and filing of this Order, and the same shall be set for hearing." *Id.* at 5.

On December 19, 2005, Hutton appealed the Tulsa County district court's judgment (docket no. 11, p. 5). On July 18, 2007, the Court of Civil Appeals of the State of Oklahoma affirmed the judgment, noting in footnote three of its opinion that a number of issues remained pending before the Tulsa County district court, including Ferguson's application for monetary sanctions and her request for attorneys' fees. *Id.* at p. 6 n.3. Hutton's petitions for rehearing and certiorari were also denied (docket no. 11, p. 5).

On January 25, 2006, Hutton filed for bankruptcy in this Court under Chapter 7 in Case No. 06-10078 (*see* docket no. 11, ex. 9). Hutton's "Schedule E – Creditors Holding Unsecured Priority Claims" schedules Ferguson as a creditor for a "domestic support obligation" (*see* docket no. 11, ex. 10). Hutton's "Schedule F – Creditors Holding Unsecured Nonpriority Claims" schedules Ferguson as a creditor for "Sanctions" and discloses James R. Gotwals as "ex-wife's attorney" for "Notice Only." (Docket no. 11, ex. 11). The case was deemed a no asset case, and no complaints to determine dischargeability were filed (docket no. 11, ex. 12).

On March 2, 2006, Hutton filed a Suggestion of Automatic Stay in the in Tulsa County district court, seeking to stop ongoing hearings regarding Ferguson's application for monetary sanctions and her request for attorneys' fees (docket no. 11, ex. 13).

On May 1, 2006, Hutton received a discharge in his bankruptcy case (docket no. 11, ex. 14).

On May 4, 2006, Hutton filed a Suggestion of Discharge in the Tulsa County district court, again seeking to stop ongoing hearings regarding the sanctions and attorneys' fees (docket no. 11, ex. 15). At the hearing, the court ordered a round of briefing relating to the impact of

Hutton's bankruptcy case (docket no. 11, ex.16).  Ferguson addressed the issue in her brief (docket no. 11, ex. 17); Hutton, however, failed to do so (docket no. 11, ex. 18).

On June 27, 2007, the Tulsa County district court heard Ferguson's applications for attorneys' fees and costs, including testimony and exhibits, and took the matter under advisement (*see* docket no. 11, ex. 19).  On October 4, 2007, the court entered an order awarding Ferguson $54,283 in attorneys' fees and $5,195 in costs.  *Id.*  After two subsequent hearings in January and February, the district court ordered an additional $56,527.50 in attorneys' fees and $600 in costs on March 20, 2008 (docket no. 11, ex. 24).  On April 23, 2008, Hutton appealed both of these orders (docket no. 11, ex. 29).  Hutton did not address the issues of stay or discharge in his appeal.  *Id.*  On May 27, 2009, the Court of Civil Appeals of the State of Oklahoma affirmed the orders (docket no. 11, ex. 30).

On August 14, 2009, Hutton moved to reopen his Chapter 7 bankruptcy case, Case No. 06-10078, to obtain a determination with regard to discharge of the two attorneys' fees judgments owed to Ferguson (*see* docket no. 11, ex. 9).  On November 30, 2009, after a hearing, this Court denied Hutton's motion with prejudice to his right to refile for 180 days.  *Id.*  On May 3, 2010, Hutton filed a voluntary petition for Chapter 13 bankruptcy in this Court in Case No. 10-11215 (*see* docket no. 11, ex. 31, p. 1).  On June 26, 2010, this Court granted Hutton's motion to voluntarily dismiss the Chapter 13 case (*see* docket no. 11, ex. 31, p. 6).  On July 5, 2010, Hutton filed a second motion to reopen his prior Chapter 7 bankruptcy case (*see* docket no. 11, ex. 9, p. 8).  On December 3, 2010, after another hearing, this Court granted the motion (*see* docket no. 11, ex. 9, p. 11).

On December 17, 2010, Hutton filed an Adversary Complaint against Ferguson and her attorneys, James R. Gotwals & Associates, ("Defendants") to determine the dischargeability of

the two attorneys' fees judgments (docket no. 1). In his Complaint, Hutton alleged that the judgments do not fall under any exception to discharge under 11 U.S.C. § 523 because (*1*) the judgments are for sanctions, which would be nondischargeable only under 11 U.S.C. § 523(a)(6) and Defendants waived this argument; (*2*) the judgments do not constitute domestic support obligations under § 523(a)(5) because they are for the benefit of Ferguson's attorneys rather than Ferguson and thus will not affect Ferguson's ability to support her children; and (*3*) the judgments do not constitute divorce-related debts under § 523(a)(15) because they are not payable "to a spouse, former spouse or child." (Docket no. 1, p. 5). Hutton further argued that, even if the attorneys' fees do constitute domestic support obligations under § 523(a)(5), they may be discharged under an exception for unusual circumstances recognized by the Tenth Circuit. *Id.*

On January 18, 2011, Defendants filed a Joint Answer, asserting as affirmative defenses that (*1*) the Complaint fails to state a claim for which relief can be granted under Rule 12(b)(6) of the Federal Rules of Civil Procedure; (*2*) the judgments are exempt from discharge under either § 523(a)(5) or § 523(a)(15); (*3*) the debts were not discharged under § 727(b); (*4*) the Complaint is barred by res judicata, (*5*) estoppel, laches and waiver; and (*6*) unclean hands due to Hutton's fraudulent schedules (docket no. 7).

On April 18, 2011, Defendants filed their Motion for Summary Judgment, listing twenty-one material facts not in dispute (docket no. 11). In their Motion, Defendants argue that the awards, even if they are sanctions, are still exempt from discharge either under § 523(a)(5) as domestic support obligations or under § 523(a)(15) as divorce-related debts. *Id.* Defendants also deny Hutton's allegation that the awards should be discharged under an exception for unusual circumstances. *Id.*

On May 23, 2011, Hutton filed his response to the Motion, wherein he objected to only one statement in the Motion's list of material undisputed facts, and offered additional material facts for the Court's consideration (docket no. 15). On June 15, 2011, a hearing was held and the issues were taken under advisement.

## THE FEE AGREEMENT

On March 24, 2005, Ferguson entered into a fee agreement (the "Agreement") with James R. Gotwals & Associates, Inc. (docket no. 11, ex. 1). Ferguson is designated as the "Client" under the Agreement. *Id.* at 6. The Agreement provides that "the term 'Client' as used in this Agreement shall also denote the responsible party, (other than any third party guarantors if any), as identified in this Agreement, who, by signing this Agreement, contracts to pay the attorneys' fees and other charges provided in this agreement." *Id.* at 1.

On the last page of the Agreement, Ferguson's mother agrees "to be the responsible party for paying fees pursuant to the above provisions on behalf of [Ferguson]." *Id.* at 6. Ferguson also signed a statement on the last page of the Agreement declaring: "I, [Ferguson] being the Client for purposes of the professional relationship created in the above contract, and being advised of my rights, do hereby consent to payment of fees thereunder by [Ferguson's mother]." *Id.*

The Agreement contains eighteen separate provisions regarding the payment of attorneys' fees (docket no. 11, ex. 1). These provisions provide, *inter alia*, that the "fees incurred will be billed to the Client," that "[t]he Client agrees that all costs expended for this matter will be paid in advance by Client," and that "[t]he Client agrees to pay all costs expended in this litigation that are not paid in advance." *Id.* at 1–2.

Furthermore, two provisions that are particularly relevant to this adversary proceeding are the provision providing credit for payment by an opposing party and the provision providing for an attorney's lien on the Client's claim. *Id.* at 3–4. The provision regarding credit for payment by an opposing party provides that the "Client shall be credited for any payments by an opposing party toward Client's fees," and that "[s]hould an opposing party fail to pay the fees and/or costs as ordered by the Court, Attorneys shall not be obligated to collect said fees from the opposing party, but Client shall remain responsible for any monies due Attorneys." *Id.* at 3. The provision regarding an attorney's lien on the Client's claim states that "Attorneys are hereby given a lien on Client's claim or cause of action for any sum or property recovered by way of settlement and/or on any judgment that may be recovered for payment of Attorneys['] fees and costs." *Id.* at 4.

## SUMMARY JUDGMENT STANDARD

The Court will grant a motion for summary judgment if the moving party shows that there is no genuine dispute as to any material fact and that it is entitled to judgment as a matter of law. FED. R. CIV. P. 56(a) (made applicable to adversary proceedings in bankruptcy by FED. R. BANKR. P. 7056); *Celotex Corp. v. Cattrett*, 477 U.S. 317, 322–23 (1986). All facts are reviewed and all inferences drawn in a light most favorable to the non-moving party. *James v. Sadler*, 909 F.2d 834, 837 (5th Cir. 1990). "The standard of review is not merely whether there is a sufficient factual dispute to permit the case to go forward, but whether a rational trier of fact could find for the non-moving party based upon the record evidence before the court." *Id.* (citing *Masushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). "The mere existence of a scintilla of evidence in support of the [non-moving party's] position will be

insufficient; there must be evidence on which the jury could reasonably find for the [non-moving party]." ***Anderson v. Liberty Lobby, Inc.***, 477 U.S. 242, 252 (1986).

## DISCUSSION

The issue before the Court is whether the awards for attorneys' fees entered in the Tulsa County district court are dischargeable in bankruptcy. As a preliminary matter, Ferguson asserts that the issue of dischargeability has been determined in the Tulsa County district court, and that res judicata would bar this Court from re-determining the matter (docket no. 11, p. 11). While bankruptcy courts are bound by the principle of res judicata, "the contours of res judicata are somewhat different for bankruptcy courts than they are for other courts." ***Browning v. Navarro***, 887 F.2d 553, 561 (5th Cir. 1989). "In only limited circumstances may bankruptcy courts defer to the doctrine of collateral estoppel and thereby ignore Congress' mandate to provide plenary review of dischargeability issues." ***Dennis v. Dennis (In re Dennis)***, 25 F.3d 274, 278 (5th Cir. 1994). "Collateral estoppel applies in bankruptcy courts only if, *inter alia*, the first court has made specific, subordinate, factual findings on the identical dischargeability issue in question— that is, an issue which encompasses the same prima facie elements as the bankruptcy issue—and the facts supporting the court's findings are discernible from that court's record. *Id.* Furthermore, "in interpreting § 523(a)(5) courts will generally look beyond the labels which state courts—and even the parties themselves—give obligations which debtors seek to have discharged." ***Milligan v. Evert (In re Evert)***, 342 F.3d 358, 364 (5th Cir. 2003). Because this Court is unable to discern from the record any specific, subordinate factual findings in the Oklahoma courts on the dischargeability issue, it is not barred from determining the dischargeability of the awards for attorneys' fees under the doctrines of res judicata or collateral estoppel.

Next, Ferguson argues that the awards are non-dischargeable because they are exempt from discharge as domestic support obligations under 11 U.S.C. § 523(a)(5) or as divorce-related debts under § 523(a)(15). Section 523(a)(5) of the Bankruptcy Code provides that "[a] discharge under section 727 . . . of this title does not discharge an individual debtor from any debt-- (5) for a domestic support obligation." 11 U.S.C. § 523(a)(5). The term "domestic support obligation" is defined in § 101(14A) of the Code as follows:

> (14A) The term "domestic support obligation" means a debt that accrues before, on, or after the date of the order for relief in a case under this title, including interest that accrues on that debt as provided under applicable nonbankruptcy law notwithstanding any other provision of this title, that is--
> (A) owed to or recoverable by--
> (i) a spouse, former spouse, or child of the debtor or such child's parent, legal guardian, or responsible relative; or
> (ii) a governmental unit;
> (B) in the nature of alimony, maintenance, or support (including assistance provided by a governmental unit) of such spouse, former spouse, or child of the debtor or such child's parent, without regard to whether such debt is expressly so designated;
> (C) established or subject to establishment before, on, or after the date of the order for relief in a case under this title, by reason of applicable provisions of--
> (i) a separation agreement, divorce decree, or property settlement agreement;
> (ii) an order of a court of record; or
> (iii) a determination made in accordance with applicable nonbankruptcy law by a governmental unit; and
> (D) not assigned to a nongovernmental entity, unless that obligation is assigned voluntarily by the spouse, former spouse, child of the debtor, or such child's parent, legal guardian, or responsible relative for the purpose of collecting the debt.

11 U.S.C. § 101(14A). In sum, for the attorneys' fees awards to meet the definition of a domestic support obligation, the awards must be (1) owed to or recoverable by a former spouse, (2) in the nature of alimony, maintenance, or support, (3) established by an order of a court of record, and (4) not assigned to a nongovernmental entity. *Id.* The elements at issue in this proceeding are (1) whether the awards for attorneys' fees are owed to or recoverable by the

debtor's former spouse and (2) whether the awards are in the nature of alimony, maintenance, or support.

Section 523(a)(15) of the Bankruptcy Code exempts from discharge certain divorce-related debts that do not meet the definition of domestic support obligations. Section 523(a)(15) provides that debts "to a spouse, former spouse, or child of the debtor . . . that [are] incurred by the debtor in the course of a divorce or separation or in connection with a separation agreement, divorce decree or other order of a court of record" are exempt from discharge in bankruptcy. 11 U.S.C. § 523(a)(15).

**I. The awards are owed to or recoverable by Hutton's former spouse.**

Hutton argues that the awards for attorneys' fees do not meet the definition of a domestic support obligation because they are not "owed to or recoverable by a spouse, former spouse, or child of the debtor." 11 U.S.C. § 101(14A)(A)(i). Specifically, Hutton argues that the awards, while nominally awarded to Ferguson, are actually for the benefit of the attorneys. Hutton relies on an opinion from the Bankruptcy Court for the Northern District of Texas for the proposition that awards of attorneys' fees are not domestic support obligations because a law firm "is not an entity to whom a 'domestic support obligation' may be owed under section 523(a)(5)." *Loe, Warren, Rosenfield, Katcher, Hibbs & Windsor, P.C. v. Brooks (In re Brooks)*, 371 B.R. 761, 764 (Bankr. N.D. Tex. 2007).

The Court notes that there is a split of authority on the issue of whether an award of attorneys' fees that otherwise meets the definition of a domestic support obligation, but may be recovered directly by the attorneys, is nondischargeable under § 523(a)(5). *See Kassicieh v. Battisti (In re Kassicieh)*, 425 B.R. 467, 472–79 (Bankr. S.D. Ohio 2010) (describing three lines of authority on the issue of "whether a debt that is in the nature of support and owed directly to a

third party . . . is exempted from discharge" under § 523(a)(5)). The issue is complicated by the fact that in the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 ("BAPCPA") Congress changed the relevant language of § 523(a)(5) and added the § 101(14A) definition of the term "domestic support obligation." *Id.* at 468. Thus, even in circuits where the law appeared to be clear prior to the adoption of BAPCPA, courts have differed in their interpretations of Congress's intent in altering the language of § 523(a)(5). *See, e.g.*, *In re Brooks*, 371 B.R. at 765–68 (finding that the change in the language of § 523(a)(5) "is intended to further the ability of 'a governmental unit' . . . to pursue a 'domestic support obligation,' not to broaden the category of entities that may assert that debts owed to them are non-dischargeable); *Morris v. Allen (In re Morris)*, 454 B.R. 660, 662–63 (Bankr. N.D. Tex. 2011) (concluding that "BAPCPA was meant to expand the universe of divorce related debts excepted from discharge" and that "the true focus . . . is on the nature of the debt and not to whom the debt is owed); *In re Andrews*, 434 B.R. 541, 546–47 (Bankr. W.D. Ark. 2010) (collecting cases analyzing the effect of BAPCPA on dischargeability under § 523(a)(5)).

Notwithstanding the lack of clarity regarding the post-BAPCPA dischargeability of debts in the nature of support that are payable directly to a third party, Hutton's reliance on *In re Brooks* is inapposite. The law firm in *In re Brooks* had intervened in the divorce proceeding and obtained separate awards against the debtor and his former spouse. 371 B.R. at 762. The debtor was not liable, either to the law firm or to his former spouse, for the award against the former spouse. *Id.* at 763. Likewise, the former spouse was not liable for the award against the debtor. *Id.* Thus, it is clear that the award in *In re Brooks* might not be owed to or recoverable by the debtor's spouse or former spouse. The award was made directly to the attorneys and only to the attorneys. *Id.* at 762–63.

By comparison, the attorneys' fees awards at issue before the Court were awarded to Ferguson, Hutton's former spouse. Furthermore, while the former spouse in *In re Brooks* was not liable for the award against the debtor, Ferguson remains liable for her attorneys' fees in the event that Hutton does not pay. The awards are not merely a benefit for Ferguson's attorneys nominally awarded to Ferguson, as Hutton asserts; they actually benefit Ferguson by relieving her of an obligation for which she would otherwise be liable. The court in *In re Brooks* declared that "[t]he typical scenario that Congress intended to prevent is when a spouse (the non-debtor) or a child is left out-of-pocket because of a debtor's bankruptcy filing." *Id.* at 767. That is the scenario that the Court is faced with in this case. Therefore, the Court finds that the awards for attorneys' fees are owed to or recoverable by Hutton's former spouse.

## II. The awards are in the nature of alimony, maintenance or support.

Hutton argues that the awards for attorneys' fees are not in the nature of alimony, maintenance, or support because they were referred to as sanctions for failure to comply with discovery orders in state court. However, "'[w]hether a particular obligation constitutes alimony, maintenance, or support within the meaning of [§ 523(a)(5)] is a matter of federal bankruptcy law, not state law.'" *Joseph v. O'Toole (In re Joseph)*, 16 F.3d 86, 87 (5th Cir. 1994) (quoting *In re Biggs*, 907 F.2d 503, 504 (5th Cir. 1990)). Thus, the Court "must place substance over form to determine the true nature and purpose of the award, regardless of the label used." *Id.* at 88.

Whether an award for attorneys' fees in a divorce proceeding is in the nature of alimony, maintenance, or support depends on the court's intent in making the award. *See Morel v. Morel (In re Morel)*, 983 F.2d 104, 105 n.3 (8th Cir. 1992) ("Although the inquiry must necessarily focus more upon the intent of the court in a contested proceeding, the issue for the Bankruptcy

Court under § 523(a)(5) remains one of intent."); *Pino v. Pino (In re Pino)*, 268 B.R. 483, 489 (Bankr. W.D. Tex. 2001) ("The crucial issue . . . is the intent of the parties (or the divorce court) and the function the award was intended to serve at the time of the divorce.").  Furthermore, an award of attorneys' fees "is deemed nondischargeable if the award itself reflects a balancing of the parties' financial needs."  *In re Joseph*, 16 F.3d at 88.  "Considerations such as the disparity in earning power of the parties, their relative business opportunities, the physical condition of the parties, their probable future need for support, the educational background of the parties, and the benefits they would have received had the marriage continued, inform this inquiry . . . ."  *Id.*

If the purpose of the underlying proceedings in which the awards for attorneys' fees arise is to provide for the benefit, support or best interests of the litigants' minor children, then the awards are in the nature of support.  *See Hudson v. Raggio & Raggio, Inc. (In re Hudson)*, 107 F.3d 355, 357 (5th Cir. 1997).  For example, "[a] court ordered obligation to pay attorney fees charged by an attorney that represents a child's parent in child support litigation against the debtor is non-dischargeable."  *Id.*  "Because the ultimate purpose of such a proceeding is to provide support for the child, the attorney fees incurred inure to her benefit and support, and therefore fall under the exception to dischargeability set out in § 523(a)(5)."  *Id.*  Where, as here, the underlying proceedings involve child custody litigation, courts have applied the same reasoning.  *See, e.g., Dvorak v. Carlson (In re Dvorak)*, 986 F.2d 940, 941 (5th Cir. 1993) (holding that attorneys' fees awarded for services during a child custody hearing were non-dischargeable because the hearing was for the child's benefit and support); *Snider v. Hill (In re Snider)*, 62 B.R. 382, 387 (Bankr. S.D. Tex. 1986) (finding an award for attorneys' fees in a child custody proceeding non-dischargeable because the award "was expressly found to be in the best interest of the[] child" and "so intertwined with the child support issues so as to make them

13

inseparable when determining dischargeability of a debt"). *See also **Hack v. Laney (In re Laney)**, 53 B.R. 231, 235 (Bankr. N.D. Tex. 1985) (finding that "the services rendered by [the attorney] in the state court proceedings were so inextricably intertwined with the welfare of the children during the litigation that it would be unreasonable to characterize the fee award as anything other than an obligation in the nature of support.").

In this case, the attorneys' fees awarded to Ferguson were awarded in connection with litigation over the custody of Hutton and Ferguson's minor children (docket no. 11, ex.6, ex. 19, ex. 24). The judgment entered by the Tulsa County district court awarded sole legal custody of the minor children to Ferguson, required Hutton to pay child support to Ferguson, and required Ferguson to submit an application for monetary sanctions to the court within thirty days (docket no. 11, ex. 6, p. 3-5). The judgment also explicitly stated that the court found this to be in the best interest of the minor children of the parties (docket no. 11, ex. 6, p. 8).

On October 4, 2007, the district court entered an order containing the first award of attorneys' fees at issue. The court relied on an Oklahoma statute, which provides that a court in a divorce proceeding may "require either party to pay such reasonable expenses of the other as may be just and proper under the circumstances." Okla. Stat. tit. 43 § 110(D). The court determined that it was required to consider and "take into account all relevant circumstances when adjudicating motions for fees and costs incurred by a party either prosecuting or defending post-decree enforcement or modification proceedings." (Docket no. 11, ex. 19, p. 4) (quoting ***Finger v. Finger***, 923 P.2d 1195, 1198 (Okla. 1996)). Furthermore, the court declared that awards for attorneys' fees "must be granted only to that litigant who qualifies for the benefit through the process of a judicial balancing of the equities." *Id.* at 4–5 (quoting ***Thielenhaus v. Thielenhaus***, 890 P.2d 925, 935 (Okla. 1995)). The court expressly considered various factors

14

in balancing the equities, including the nature of the litigation, the parties' involvement in causing or contributing to the ongoing disputes about the children, the necessity for the court to resolve even relatively minor child-related disputes, the income of the parties, actions by Hutton which caused protracted litigation, and Hutton's repeated failure to timely pay child support. *Id.* at 5. In addition, on March 20, 2008, when the district court awarded Ferguson additional attorneys' fees and costs, the court examined the relative financial circumstances of the parties, noting specifically the amount expended by Hutton in litigating the custody dispute (docket no. 11, ex. 24).

Hutton appealed both orders to the Court of Civil Appeals of the State of Oklahoma (docket no. 11, ex. 30). In his appeal, Hutton argued that the district court had erred in awarding Ferguson her attorneys' fees as a discovery sanction because a large portion of those fees were not clearly related to his failure to comply with discovery. *Id.* at 7. The Court of Civil Appeals agreed, upholding both awards as general awards of attorneys' fees and expenses under title 43, section 110(D) of the Oklahoma Statutes. *Id.* at 8–9.

Based on the foregoing, the Court finds that the awards for attorneys' fees to Ferguson are in the nature of alimony, maintenance, or support. The awards arose from a dispute over custody of the parties' minor children. The judgment specifically stated that the proceeding was for the best interest of the children. Furthermore, one of the factors considered by the Tulsa County district court in awarding the fees was Hutton's failure to pay child support in a timely manner. Thus, the attorneys' fees are in the nature of support to the minor children.

Hutton cites various cases finding that certain sanctions are not in the nature of support (docket no. 15, p. 4). In considering these and similar cases, the Court notes that in each case the trial court that awarded the fees made clear that the awards were meant exclusively as sanctions

and that the relevant financial circumstances of the parties were not considered.  *See, e.g.*, **Estate of Mayer v. Hawe**, 303 B.R. 375, 378–79 (E.D. Wis. 2003) ("[T]he language of the probate court's order makes clear that the court did not impose attorney's fees and costs on [the debtor] for the purpose of enforcing her duty to support [her spouse and adult child]."); **In re Spence**, No. 02-12093-BKC-AJC, 2009 WL 3483741, at *3 (Bankr. S.D. Fla. Oct. 26, 2009) ("Debtor's misconduct during divorce proceedings was the sole reason given . . . for assessing fees as sanctions against Debtor. . . . [N]either the Strike Order, nor the Master's Reports I or II, nor the Sanctions Orders I or II contain any language indicating that the assessment of fees was based upon the respective wages or ability of the parties to pay.") (internal citations omitted); **In re Lopez**, 405 B.R. 382, 385 (S.D. Fla. 2009) ("The State Court Order . . . specifically held that '[t]his Court's award of attorney fees and costs in favor of the former Husband is based upon and supported by the bad faith litigation misconduct of the former Wife, and is not based upon the respective wages or ability of the parties to pay.'"); **Lees v. Lees (In re Lees)**, Ch. 7 Case No. 2:03-bk-06143-PHX-CGC, Adv. No. 2:03-ap-00851, 2008 WL 192967, at *4 (Bankr. D. Ariz. Jan. 22, 2008) (noting that the trial judge "clearly was of the view that the award . . . was not in the nature of support; indeed, he excised any language in the form of the judgment that would have supported such a conclusion").

Here, the Tulsa County district court explicitly stated that it had balanced the equities, including the financial needs of the parties, in granting the awards.  On appeal, the awards were upheld not as sanctions, but as general awards of attorneys' fees pursuant to the balancing test employed by the district court.  While this Court is not bound by the state district court's reasoning, it is free to consider and even adopt that court's characterization of the awards.  **Whipple v. Fulton (In re Fulton)**, 236 B.R. 626, 630–31 (Bankr. E.D. Tex. 1999).  Thus,

considering the record and the relevant state-court litigation on the issue of whether the awards are properly characterized as discovery sanctions, the Court finds that the awards at issue are in the nature of alimony, maintenance, or support under federal bankruptcy law.

### III. Ferguson is liable for her attorneys' fees.

Hutton argues that, even if the Court finds that the awards for attorneys' fees are payable to his former spouse and in the nature of alimony, maintenance, or support, they are nonetheless dischargeable because Ferguson is not liable for their payment in the event that they are discharged. In certain cases, courts have permitted the discharge of an attorneys' fees award that otherwise qualified as a domestic support obligation where the spouse was not liable for their payment; however, as explained below, the rationale for doing so rests on the idea that a discharge in such circumstances in no way harms the non-debtor spouse. In other words, excluding the debts from discharge would not serve the purpose of § 523(a)(5), which is to prevent former spouses from being "left out-of-pocket because of a debtor's bankruptcy filing." *In re Brooks*, 371 B.R. at 767; *see also* **Linn v. Linn (In re Linn)**, 38 B.R. 762, 763 (B.A.P. 9th Cir. 1984) (citations omitted) ("Excluding these debts from discharge will not further the bankruptcy goal of a fresh start unburdened by old debts. Nor will it protect spouses, former spouses, and children from being injured by a debtor's discharge.").

For example, courts have typically addressed the issue in the context of an award for attorneys' fees that is payable directly to the non-debtor spouse's attorneys. *See, e.g.*, **Aldrich v. Papi (In re Papi)**, 427 B.R. 457, 459 (Bankr. N.D. Ill. 2010) (quoting the order of the trial court in the divorce proceedings entering judgment for attorneys' fees against the debtor and in favor of the non-debtor spouse's attorneys); **Simon, Schindler & Sandberg, LLP v. Gentilini (In re Gentilini)**, 365 B.R. 251 (Bankr. S.D. Fla. 2007) (noting that the state court had ordered "the

debtor to pay . . . attorneys' fees to the Law Firm" and that "[o]n that same day . . . the state court entered a Final Judgment for Attorneys' Fees in favor of the Law Firm and against the Debtor"). In such cases, courts have typically focused on the requirement that a domestic support obligation be "owed to or recoverable by a spouse, former spouse, or child of the debtor." 11 U.S.C. § 101(14A)(A)(i). If the non-debtor spouse would remain liable for the attorneys' fees if the debt was discharged, then courts typically find that the award is "owed to or recoverable by" the non-debtor spouse. *See, e.g.*, *In re Papi*, 427 B.R. at 464 (holding that the debtor's obligation to pay his former spouse's attorneys was a debt "owed to or recoverable by" his former spouse because she would remain liable for her attorneys' fees if the debtor failed to pay); *In re Andrews*, 434 B.R. at 548 (holding that because the debtor's former spouse remained liable for her attorneys' fees, the debtor's obligation to the attorneys could be deemed a debt owed directly to his former spouse). Likewise, if the non-debtor spouse is not liable for the attorneys' fees in the event of discharge, some courts have found that the award is not "owed to or recoverable by" the non-debtor spouse. *See, e.g.*, *In re Linn*, 38 B.R. at 763 (finding an award for attorneys' fees in a divorce proceeding dischargeable in bankruptcy because the debtor was solely liable for the fees and the former wife and child would not be liable in the event of nonpayment); *In re Gentilini*, 365 B.R. at 256 (holding an award for attorneys' fees dischargeable because the statute of limitations for enforcement of the obligation against the debtor's former spouse had run prior to the debtor's bankruptcy filing).

Hutton argues that Ferguson is not liable for her attorneys' fees for two reasons. First, Hutton argues that the statute of limitations for the attorneys' enforcement of the obligation against Ferguson has run (docket no. 15, p. 5). Second, Hutton argues that Ferguson's mother,

rather than Ferguson herself, is the only individual contractually obligated to pay the fees. *Id.* at 6.

### A. The statute of limitations has not run on the enforcement of the attorneys' fees obligation against Ferguson.

Under Oklahoma law, the statute of limitations for an action upon a contract is five years. Okla. Stat. tit. 12 § 95(A)(1); *Nichols v. Nichols*, 222 P.3d 1049, 1053 n.9 (Okla. 2009). However, under Oklahoma law, "[w]hen an award for an attorney's fee is made directly to the client who is a party, a constructive trust attaches *eo instante* by operation of law to the award for the benefit of the lawyer who performed the services for which compensation is allowed" and "[t]he client stands as a constructive trustee and the lawyer as a constructive beneficiary." *Nichols*, 222 P.3d at 1054 (footnote omitted). Under Oklahoma's constructive-trust theory regarding awards of attorneys' fees, the five-year statute of limitations for action upon a contract is inapplicable. *Id.* at 1055. Rather, "[t]he continuing trust character of the award operates against the running of any limitation in favor of the [constructive trustee] until she has clearly repudiated the trust and the repudiation has been brought to the attention of the trust beneficiary." *Id.*

It is apparent from the record that Ferguson has not repudiated the constructive trust attached to the awards for attorneys' fees. Under Oklahoma law, repudiation occurs when the constructive trustee "acts in a manner amounting to a denial of the existence of the trust." *Kinzy v. State el rel. Okla. Firefighters Pension & Ret. Sys.*, 20 P.3d 818, 822 (Okla. 2001); *see also Catron v. First Nat'l Bank & Trust Co. of Tulsa*, 434 P.2d 263, 273 (Okla. 1967) (finding that "a written declaration by the trustee that all property belongs to him and that the beneficiary has no interest therein" was a repudiation of the trust relationship). Furthermore, repudiation does not set the statute of limitations running until the constructive beneficiary receives notice of the

repudiation. *Catron*, 434 P.2d at 273; *Goodall v. Trigg Drilling Co.*, 944 P.2d 292, 294–95 (Okla. 1997).

Ferguson has made payments to her attorneys, both with funds received from Hutton and with her own personal funds (docket no. 25, ex. 3). Rather than amounting to a denial of the existence of the trust, Ferguson's payments of attorneys fees over several years, wherein she receives funds from Hutton and remits them to her attorneys as constructive trustee for her attorneys' benefit, are evidence that she has not repudiated the constructive trust. *Cf. Goodall*, 944 P.2d at 294–95 (Okla. 1997) (discussing repudiation of a trust relationship involving a failure to pay oil and gas royalties). Thus, the statute of limitations has not run on the attorneys' ability to recover the fees against Ferguson.

### B. Ferguson is contractually obligated to pay her attorneys' fees.

Hutton also argues that under the terms of the Agreement, it is Ferguson's mother, rather than Ferguson herself, who is liable for payment of the attorneys' fees. The Agreement states that "the term 'Client' as used in this Agreement shall also denote the responsible party, (other than any third party guarantors if any), as identified in this Agreement, who, by signing this Agreement, contracts to pay the attorneys' fees and other charges provided in this agreement." (Docket no. 11, ex. 1, p. 1). Ferguson is identified as the "Client" and her mother is identified as "the responsible party for paying fees pursuant to the above provisions on behalf of [Ferguson]." *Id.* at 6.

In interpreting the Agreement, the Court must look to the intentions of the parties in entering the contract. *Pitco Prod. Co. v. Chaparral Energy, Inc.*, 63 P.3d 541, 545 (Okla. 2003). "If language of a contract is clear and free of ambiguity, the court is to interpret it as a matter of law, giving effect to the mutual intent of the parties at the time of contracting." *Id.*

"Whether a contract is ambiguous and hence requires extrinsic evidence to clarify the doubt is a question of law for the courts." *Id.* "A contract is ambiguous if it is reasonably susceptible to at least two different constructions." *Id.* at 545–46. To decide whether a contract is ambiguous, we look to the language of the entire agreement." *Id.* at 546. "A contract must be considered as a whole so as to give effect to all its provisions." *Id.*

Looking to the language of the Agreement and considering the contract as a whole so as to give effect to all its provisions, it is clear that the intent of the parties was to designate Ferguson's mother as an additional person from whom the attorneys could seek to recover their fees, not to relieve Ferguson of her liability to pay for the services that she would receive. This intent is clear from the fact that the Agreement gives the attorneys a lien on any monies recovered by Ferguson in the litigation (docket 11, ex. 1, p. 4). Furthermore, the Agreement states that the term "Client . . . shall also denote the responsible party." The Agreement then lists seventeen additional provisions which refer only to the "Client" and her responsibility for payment of fees and costs. In order to give effect to all of these provisions, the Court must interpret the language to mean that the term "Client" means both the client and the responsible party. To interpret the term to mean only the responsible party would render several provisions, such as the provision placing a lien on the "Client's" claim, without any meaningful effect.

Such an interpretation is consistent both with the language of the Agreement and the behavior of the parties. While Ferguson's mother initially paid the attorneys' retainer, Ferguson has made multiple payments to her attorneys, both out of funds received from Hutton and from her own personal funds, over several years (docket no. 25, ex. 3). Furthermore, the Court's determination that Ferguson remains liable for her attorneys' fees under the Agreement is

consistent with the findings of the Tulsa County district court in its order dated March 20, 2008 (docket no. 11, ex. 24, p. 2).

**IV.  The award is not dischargeable under an exception for unusual circumstances.**

Finally, Hutton argues that even if the Court finds that the attorneys' fees are non-dischargeable domestic support obligations, they should nonetheless be discharged under an exception for unusual circumstances articulated by the Tenth Circuit in ***Lowther v. Lowther (In re Lowther)***, 321 F.3d 946 (10th Cir. 2002).

In *Lowther*, the Tenth Circuit held that an award for attorneys' fees related to divorce and child-custody proceedings was dischargeable in bankruptcy under an exception first announced in ***Jones v. Jones (In re Jones)***, 9 F.3d 878 (10th Cir. 1993).  In *Jones*, the Tenth Circuit held that "the term 'support' encompasses the issue of custody absent unusual circumstances."  *Id.* at 883.  The exception for unusual circumstances is thus directed at the issue of whether an award for attorneys' fees incurred during child custody proceedings actually constitutes support under § 523(a)(5).  *Id.*  In *In re Lowther*, the Tenth Circuit applied its unusual circumstances exception for the first time.  321 F.3d at 948.  Indeed, the circumstances in *Lowther* were unusual.  In the divorce and child-custody proceedings, the Oklahoma state court required the parent who was awarded custody of the child to pay the non-custodial parent's attorneys' fees, while the non-custodial parent was ordered to pay $167 per month in child support to the custodial parent.  *Id.* at 947–48.  The Tenth Circuit noted that it would take the custodial parent approximately five years to pay the award for attorneys' fees at a rate of $167 per month, effectively negating the award for child support during that time period.  *Id.* at 949.  The court determined that, in light of the custodial parent's income without the child support, the negation of the child support

22

payments by the award for attorneys' fees would "clearly affect" the custodial parent's ability to financially support the child. *Id.*

The Fifth Circuit has never adopted this exception. Moreover, case law indicates that it would be unlikely to do so. In an unpublished opinion, the Fifth Circuit stated that "in this circuit, [the] *Lowther* argument has been rejected implicitly." ***Rogers v. Morin***, 189 F. App'x 299, 303 (5th Cir. 2006). The court discussed its earlier decision in ***Sonntag v. Prax (In re Sonntag)***, 115 F. App'x 680 (5th Cir. 2004), wherein the debtor argued that the Fifth Circuit should adopt the Tenth Circuit's unusual circumstances exception. ***Rogers v. Morin***, 189 F. App'x at 303. Without addressing the argument, the Fifth Circuit in *In re Sonntag* deemed the awards for attorneys' fees non-dischargeable under § 523(a)(5) because they were "awarded in connection with a child custody dispute." ***In re Sonntag***, 115 F. App'x at 82 (citing ***In re Hudson***, 107 F.3d at 357; ***In re Dvorak***, 986 F.2d at 941). In *Rogers v. Morin*, the Fifth Circuit explicitly declined to decide whether to endorse or reject the Tenth Circuit's unusual circumstances exception. 189 F. App'x at 304. Nonetheless, the Court "is not persuaded that the Fifth Circuit, having spoken so plainly in *Dvorak* and *Hudson*, would follow the Tenth Circuit." *Id.* at 304 (quoting ***Sonntag v. Prax (In re Sonntag)***, 2004 WL 764728, at *2 (N.D. Tex. 2004).

Even if the unusual circumstances exception were applicable in this case, Hutton has not established the unusual circumstances necessary for an exception to non-dischargeability. Hutton's obligation to pay Ferguson's attorneys' fees will not negate the payments for child support that Ferguson is entitled to receive under the Tulsa County district court's judgment of November 18, 2005. To the contrary, were Hutton's obligation discharged, Ferguson would remain liable for her attorneys' fees, thus shifting the burden of payment onto Ferguson as the

custodial parent.  It would be more likely then, if Hutton's obligation were discharged, that the attorneys' fees would negate Ferguson's award for child support.

## CONCLUSION

The awards for attorneys' fees entered in the Oklahoma trial court are not dischargeable in bankruptcy because they are domestic support obligations under 11 U.S.C. § 523(a)(5).  The awards are "owed to or recoverable by" Ferguson, and she would remain liable for their payment in the event of discharge.  The awards are "in the nature of support" because they arose from a dispute regarding custody of the couple's minor children.  Because the awards are domestic support obligations under § 523(a)(5), it is unnecessary to address Ferguson's argument that the debts may be non-dischargeable as divorce-related debts under § 523(a)(15).

For the foregoing reasons, the Court finds that Defendants' Motion for Summary Judgment filed April 18, 2011 (docket no. 11) should be GRANTED.  A Judgment shall be entered contemporaneously herewith.

IT IS SO ORDERED.

# # #